IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF NEW JERSEY
NEWARK VICINAGE

HUGH REID, Individually and as Representative
of a Class of Participants and Beneficiaries on
Behalf of the Conduent Business Services, LLC
Welfare Benefit Plan

       Plaintiff,

v.                                                     Case No._____

CONDUENT BUSINESS SERVICES, LLC;

       Defendant.

## CLASS ACTION COMPLAINT

Plaintiff Hugh Reid ("Plaintiff"), individually and on behalf of the Class of participants and beneficiaries in the Conduent Business Services, LLC Welfare Benefit Plan (the "Conduent Plan") and Conduent Supplemental Life Insurance ("Supplemental Life Insurance"), as defined below, alleges the following against Conduent Business Services, LLC ("Conduent" or "Defendant"), based upon personal knowledge with respect to himself and on information and belief derived from, among other things, investigation of counsel and review of public documents as to all other matters:

## NATURE OF THE ACTION

1. It is unlawful for entities like Conduent to impose punitive health insurance surcharges on employees who use tobacco products.

2. This lawsuit challenges Defendant's practice of charging a "tobacco surcharge" that unjustly forces certain employees to pay higher premiums for their health and other insurances provided by Conduent. Such surcharges violate the Employee Retirement

1

Income Security Act ("ERISA") of 1974 and its anti-discrimination provisions by unfairly targeting employees based on their health status, such as tobacco use.

3.     Since at least 2020, Plaintiff has been required to pay tobacco surcharge penalties in order to maintain health and other insurance coverage under the Conduent-sponsored health plan. The surcharge—anywhere from $600 to over $1500 per year, depending on the Plan year—imposes an additional financial burden on Plaintiff and other similarly situated employees.

4.     Tobacco surcharges have proliferated in recent years. But to be legal, they must strictly comply with the terms of ERISA, the Public Health Service Act ("PHSA"), and their implementing regulations.

5.     Conduent's tobacco surcharge program fails to comply with the terms of ERISA and the PHSA and their implementing regulations. Conduent therefore cannot take advantage of the statutes' safe harbors, 29 U.S.C. § 1182(b)(2)(B) and 42 U.S.C. § 300gg-4(b)(2)(B). These tobacco surcharges are discriminatory, health-based surcharges in violation of the law and in violation of the ERISA fiduciary duties owed to Conduent Plan participants and beneficiaries.

6.     ERISA's anti-discrimination provisions prohibit any medical plan from charging an extra premium or fee based on any health-status-related factor, including nicotine or tobacco use, unless that fee is part of a *bona fide* "wellness program." 29 U.S.C. § 1182(b)(1); 42 U.S.C. § 300gg-4(b)(1).

7.     To qualify as a *bona fide* wellness program under ERISA, a company must offer a "reasonable alternative standard," by which a participant can receive the program's "full reward," that is, avoid the surcharge for the entire plan year (not just prospectively

2

once the "reasonable alternative standard" has been completed).

8.      Moreover, to be a *bona fide* wellness program, a company must also provide *notice* that such a reasonable alternative exists for nicotine or tobacco users in *every Plan communication* discussing the premium differential, including contact information and a statement that the recommendations of participants' physicians will be accommodated.

9.      At present, and over the last six (6) or more years, Conduent failed to include the proper notice in **all** Plan materials discussing the surcharge, including a notice of a reasonable alternative standard and the physician-accommodation statement. Several of Conduent's participant-facing materials describe the tobacco surcharge and the increased premium contributions imposed on participants, but do not provide compliant notice of all the avenues by which participants can avoid the surcharge as expressly required by 45 C.F.R. § 146.121(f)(4)(v). This is not a minor technical failure; it is a fundamental violation of ERISA's core anti-discriminatory purpose: ensuring that all participants have a fair and compliant opportunity to be treated the same as non-nicotine-users.

10.     Additionally, the Conduent Plan does not provide the required reasonable alternative standard, and even if it did, Defendant has failed to adequately notify employees in all plan communications about the availability of such an alternative that would enable employees to avoid the surcharge for the entire year. Consequently, Defendant's tobacco surcharge violates ERISA's anti-discrimination provisions by imposing additional costs on employees who use tobacco products without meeting the legal requirements for a *bona fide* wellness program.

11.     Once a participant alleges that a surcharge violates ERISA's anti-discrimination provisions and alleges facts to support the deficiency in the wellness program, the burden

shifts to the employer to demonstrate that its wellness program fully satisfies all the statutory and regulatory criteria, including the obligation to make available the "full reward" and to notify participants of the same. *See Cunningham v. Cornell Univ.*, 145 S. Ct. 1020, 1029 (2025) (reaffirming the statute "place[s] on ERISA defendants the burden of proving [an] exemption's applicability.").

12.    Because Defendant failed to comply with all the statutory and regulatory criteria needed to take advantage of ERISA's safe harbor, the nicotine / tobacco surcharge violates ERISA's anti-discrimination requirements. Its collection by Conduent was, and remains, unlawful.

13.    Plaintiff brings this lawsuit individually and on behalf of all similarly situated Conduent Plan participants and beneficiaries, including those who purchased Supplemental Life Insurance, seeking to recover the unlawfully charged tobacco surcharges and to obtain plan-wide equitable relief to prevent Conduent from continuing to collect these improper fees in violation of ERISA. Under 29 U.S.C. §§ 1109 and 1132(a)(2), Defendant, as the fiduciary of the Plan, has a legal obligation to act in the best interests of its participants and to comply with federal law. Plaintiff, on behalf of himself and the Conduent Plan as a whole, seeks appropriate equitable relief under 29 U.S.C. §§ 1132(a)(2) and (a)(3) to address Defendant's ongoing violations of ERISA's anti-discrimination provisions.

## **PARTIES**

14.    Plaintiff Hugh Reid is, and at all times mentioned herein was, an individual citizen of the State of North Carolina. Mr. Reid was an employee of Conduent from 2019 to 2021 and was a participant of the Conduent Plan who  paid  the  tobacco surcharge, which was taken directly from his paycheck each pay period, including during the Class Period

(March 23, 2020, to the time of judgment).

15.     Plaintiff was a participant in the Conduent Plan pursuant to 29 U.S.C. § 1002(7) during the Class Period.

16.     Conduent is a Fortune 1000 company and a "business solutions partner of choice for businesses and governments globally."  Conduent claims approximately 51,000 employees across the globe, with over $3 billion in total revenue in 2025. Its corporate headquarters are located at 100 Campus Drive, Suite 200, in Florham Park, NJ.

17.     Ironically, given the clear legal violations at issue in this action, one of the business services Conduent offers is ERISA plan administration.  This includes health plan administration.

18.     At all times relevant to this lawsuit, Conduent sponsored, maintained, and managed the Conduent Plan and Supplemental Life Insurance, which was available to Conduent employees and their dependents.

19.     At all times relevant to this lawsuit, Conduent acted as the Conduent Plan Administrator and named fiduciary.[1]

20.     Public documents show the Conduent Plan had over 22,500 active participants as of December 31, 2024.

21.     The Plan is an employee benefit plan subject to the provisions and statutory requirements of ERISA pursuant to 29 U.S.C. § 1003(a).

## **JURISDICTION AND VENUE**

22. The Court has subject matter jurisdiction pursuant to 29 U.S.C. §1132(e)(1) and

---

[1] Plaintiff currently lacks knowledge of the identities of the individual fiduciaries of the Conduent Plan. Following discovery, Plaintiff will amend the complaint to add the individual fiduciaries' names.

29 U.S.C. § 1331, as this suit seeks relief under ERISA, a federal statute. It also has subject matter jurisdiction under the Class Action Fairness Act, 28 U.S.C. § 1332(d)(2). The amount in controversy exceeds $5 million, exclusive of interest and costs.

23. This Court has personal jurisdiction over Defendant because Conduent is registered and headquartered in this District, and Plaintiff's claims and the claims of all others similarly situated arise from the acts and omissions of Defendant with respect to its activities and conduct concerning Plaintiff and the Class in the State of New Jersey.

24. Venue is proper in this District under 28 U.S.C. § 1132(e)(2) because this is the District in which Defendant has its principal place of business and where a substantial portion of the statutory breach took place. Additionally, Defendant conducts business and can be found in this District and the Conduent Plan is administered in this District.

## **BACKGROUND**

### I. ERISA'S PROHIBITION ON PREMIUM DISCRIMINATION AND THE NARROW WELLNESS PROGRAM EXCEPTION

25. As a baseline rule, ERISA and the PHSA prohibit any health insurer or medical plan from discriminating against participants in providing coverage or charging premiums based on a "health-related factor," including tobacco use. Under this rule, a plan "may not require any individual (as a condition of enrollment or continued enrollment under the plan) to pay a premium or contribution that is greater than such premium or contribution for a similarly situated individual enrolled in the plan based on any health-related factor in relation to the individual or to an individual enrolled under the plan as a dependent of the individual." ERISA § 702(b)(1), 29 U.S.C. § 1182(b)(1); 42 U.S.C. § 300gg-4(b)(1).

26. The statute permits group health plans to "establish[] premium discounts or rebates . . . in return for adherence to *programs of health promotion and disease prevention*"

(29 U.S.C. § 1182(b)(2)(B) (emphases added)); however, these "wellness programs"—to qualify for this statutory safe-harbor exception—must strictly adhere to the mandated regulatory requirements.

27. Under ERISA § 505, 29 U.S.C. § 1135, Congress instructed the Departments of Labor, Health and Human Services, and Treasury (the "Departments") to issue regulations operationalizing the prohibition against discrimination against participants and beneficiaries based on their health status under ERISA § 702, 29 U.S.C. § 1182 and PHSA § 2705, 42 U.S.C. § 300gg-4. This authority empowers the Departments to "prescribe such regulations as [they] find[] necessary or appropriate to carry out the provisions of" Title I of ERISA. (29 U.S.C. § 1135). Furthermore, ERISA § 734, 29 U.S.C. § 1191c, explicitly reinforces the Departments' authority to issue regulations concerning group health plan requirements, which grants the power to "promulgate such regulations as may be necessary or appropriate to carry out the provisions" of ERISA Title I, Part 7. 29 U.S.C. § 1191c.

28. In 2006, the Departments issued regulations through the notice-and-comment rulemaking process outlining the criteria that a wellness program must meet to qualify for the premium non-discrimination exception under ERISA § 702(b). *See Incentives for Nondiscriminatory Wellness Programs in Group Health Plans*, 78 Fed. Reg. 33158, 33163 (June 3, 2013) (hereinafter the "Final Regulations"). Congress incorporated those regulations into the PHSA in 2010 and, therefore, the Departments published the Final Regulations to "amend the 2006 regulations regarding nondiscriminatory wellness programs." *Id.*, 33159; *see also* 29 C.F.R. § 2590.702(f)(4) and 45 C.F.R. § 146.121(f)(4). These Final Regulations were approved and signed in 2013 to be effective January 1, 2014. Final Regulations, 33158.

29. The Final Regulations specify that health promotion or disease prevention pro-

grams, such as outcome-based wellness initiatives (i.e., smoking cessation programs), must meet detailed requirements to qualify for the safe harbor. As the Departments explained, these criteria "*must be satisfied* in order for the plan or issuer to qualify for an exception to the prohibition on discrimination based on health status." *Id.*, 33163. "That is," the Departments explained, "these rules set forth criteria for an *affirmative defense* that can be used by plans and issuers in response to a claim that the plan or issuer discriminated" against participants. *Id.* (emphasis added). That means once a participant alleges a discriminatory surcharge, the burden shifts to the employer to prove that the surcharge is non-discriminatory because the wellness plan qualifies as a "program[] of health promotion and disease prevention" that satisfies *all* the necessary regulatory criteria.  *See Cunningham v. Cornell Univ., supra.*

30. Compliance with the regulatory criteria is not optional. These criteria are the only lawful pathway for plans to impose health-based premium differentials without violating ERISA's anti-discrimination provisions. *See* Final Regulations, 33160 ("these [F]inal [R]egulations set forth criteria for a program of health promotion or disease prevention . . . that *must be satisfied* in order for the plan or issuer to qualify for an exception to the prohibition on discrimination . . . ." (emphases added)).

31. Only by satisfying *all* of the regulatory criteria can employers ensure their plans are wellness programs and "not a subterfuge for underwriting or reducing benefits based on health status." *Id.* As one court concluded, regarding an employer's obligation to satisfy the regulatory criteria in a tobacco surcharge case: "[a]ll means all … no matter how small the requirement may be." *Chirinian v. Travelers Co.*, No. 24-cv-3956, 2025 U.S. Dist. LEXIS 144669, at *28 (D. Minn. July 29, 2025).

32. To comply with ERISA and avoid unlawful discriminatory surcharges, outcome-

based wellness programs must meet the following five (5) criteria:

(a) Frequency of opportunity to qualify: Participants must be given at least one chance annually to qualify for the reward associated with the program to ensure ongoing accessibility and fairness. 29 C.F.R. § 2590.702(f)(4)(i).

(b) Size of reward: Penalties or rewards cannot exceed 50% of the cost of employee-only coverage. § 2590.702(f)(4)(ii).

(c) Reasonable design: programs must be "reasonably designed" to promote health and cannot be "a subterfuge for discriminating based on a health factor." This determination is based on all the relevant facts and circumstances. "To ensure that an outcome-based wellness program is reasonably designed to improve health and does not act as a subterfuge for underwriting or reducing benefits based on a health factor, a reasonable alternative standard to qualify for the reward must be provided to any individual who does not meet the initial standard based on a measurement, test, or screening. . . ." § 2590.702(f)(4)(iii).

(d) Uniform availability and reasonable alternative standards: "The full reward under the outcome-based wellness program must be available to all similarly situated individuals." 29 C.F.R. § 2590.702(f)(4)(iv). This includes a requirement that "the program allows a reasonable alternative standard (or waiver of the otherwise applicable standard) for obtaining the reward for any individual who does not meet the initial standard…." Id.

(e) Notice Requirement: "The plan must disclose in all plan materials describing the terms of the program the availability of other means of qualifying for the [full] reward." Final Regulations, 33159 (emphasis added).

33. For health-contingent wellness programs, the statute and Final Regulations require the notice be disclosed "in **all** plan materials describing the terms of" the program. 42 U.S.C. § 300gg-4(j)(3)(E); 29 C.F.R. § 2590.702(f)(4) (emphasis added). Plans that describe surcharges in enrollment materials without including the required notice violate this rule and fail to qualify for the statutory safe harbor. The notice requirement states:

> **Notice of availability of reasonable alternative standard**. The plan or issuer *must* disclose *in all plan materials* describing the terms of an outcome-based wellness program, and in any disclosure that an individual did not satisfy an initial outcome-based standard, *the availability of a reasonable alternative standard to qualify for the reward (and, if applicable, the possibility of waiver of the otherwise applicable standard), including contact information for obtaining a reasonable alternative standard and a statement that recommendations of an individual's personal physician will be accommodated*. If plan materials merely mention that such a program is available, without describing its terms, this disclosure is not required. Sample language is provided in paragraph (f)(6) of this section, as well as in certain examples of this section.

29 C.F.R. § 2590.702(f)(4)(v) (emphases added).

34. The Departments explained that documents that merely "mention" a program, without describing its terms, need not include the notice. However, any plan materials that reference a premium differential based on tobacco use or other health-contingent standard must contain the required disclosure. Final Regulations, 33166 ("a plan disclosure that references a premium differential based on tobacco use … is a disclosure describing the terms of a health-contingent wellness program and, therefore, must include this disclosure."). Thus, enrollment materials or benefit guides that reference higher premiums or surcharges based on tobacco use, but omit the required disclosure notice regarding a reasonable alternative standard, including omitting contact information and a statement that a participant's physician's recommendations

will be accommodated, violate this rule.

35. These requirements exist precisely to prevent employers from including these disclosures in some plan materials but then excluding that information from materials that are actually sent to participants. Employers that include misleading and varying notices, and omit the required disclosures altogether from most plan communications run directly contrary to the Departments' guidance and fail to provide the notice necessary to make informed enrollment decisions.

36. Defendant imposes a premium differential without providing the required notice disclosures in many of the participant-facing communications sent to participants.

## II.    DEFENDANT'S TOBACCO SURCHARGE VIOLATES ERISA'S ANTI DISCRIMINATION RULE.

37. On its face, the Conduent tobacco surcharge violates ERISA because Defendant fails to comply with the statutory and regulatory notice requirements.

38. A plan "may not require any individual (as a condition of enrollment or continued enrollment under the plan) to pay a premium or contribution that is greater than such premium or contribution for a similarly situated individual enrolled in the plan on the basis of any health-status related factor in relation to the individual or to an individual enrolled under the plan as a dependent of the individual." 29 U.S.C. § 1182(b)(1); 42 U.S.C. § 300gg-4(b)(1).

39. Defendant's tobacco surcharge violates this provision. Plaintiff, and all others similarly situated, was required to pay an additional premium or contribution per year based on a "health status-related factor" — their use of tobacco products. Plaintiff, and all others similarly situated, was forced to pay the tobacco surcharge to remain insured under the Plan.

40. Specifically, Defendant imposes an unlawful tobacco surcharge on employees and their beneficiaries (*e.g.*, spouses/domestic partners) who are enrolled in the Conduent Plan and

Supplemental Life Insurance  and have used tobacco products within the last six months.

41.  All U.S. benefits-eligible employees (and their covered spouses/domestic partners, where applicable) who have used tobacco products within six months pay higher rates at least under the : (1) Conduent Plan; and (2) Conduent Supplemental Life Insurance.

42. Conduent sometimes refers to this surcharge as a "nicotine surcharge" in its written materials, and sometimes as a "tobacco surcharge."  On information and belief, there is no substantive distinction between the two.

43. Under the Conduent Plan, a surcharge is imposed on any participant or beneficiary who "use[s] tobacco/nicotine or have used tobacco products during the last six months." In other words, any individual who has used any type of tobacco product (i.e., smoked a cigarette or ever used any other tobacco product such as a cigar, pipe, vape, hookah, e-cigarette, clove cigarette or any form of smokeless tobacco, including chewing tobacco, oral nicotine pouches, dip or snuff), regardless of the frequency (or infrequency) of the use, at any point in time in the six months preceding each annual Plan enrollment, must pay this $600 surcharge.

44. In prior Plan years, the surcharge was even higher. Plaintiff's 2020 Conduent paystubs reflect that he paid $63.16 per pay period, adding up to over $1,500 in tobacco sur-charges for that one year alone.

45. When employees enroll as newly eligible employees or during a subsequent annual enrollment period in the Conduent Plan, they are presumptively treated as tobacco users.  In order to "avoid the nicotine surcharge," they must explicitly "attest [the] nicotine status during Annual Enrollment."  In other words, employees must explicitly declare (and re-declare, every single year) that they have been completely tobacco-free for 6 months under the Plan's strict definition or the surcharge will be imposed on them regardless.  Employees are not told how

12

to actually accomplish this declaration; the Benefits Guide vaguely suggests that they should "watch your email and home mail for instructions" that will come at some point in the three-month period of the following year's "Q1".

46. The status they report remains in effect, even if the employee later becomes to-bacco-free, until the next Annual Enrollment Deadline.

47. Only after employees (and/or their covered spouse/domestic partner) have been tobacco-free for six months on the Annual Enrollment Date, will they potentially be eligible for lower non-tobacco user rates for the *following* Plan Year.  In the meantime they will con-tinue paying the higher "tobacco user" rates. In other words, any relief from the tobacco sur-charge is only prospective, and has a waiting period before it goes into effect.

48. Under this tobacco surcharge program, Plaintiff paid thousands of dollars in sur-charges to Conduent in order to maintain health insurance, something he and his family could not go without.

49. A tobacco surcharge is also imposed on tobacco users who opt into the "Supple-mental Life Insurance" coverage. Rather than a flat surcharge, this surcharge appears to vary based on employee demographic factors such as age and marital status.

50. Oddly, the Supplemental Life Insurance policy defines "tobacco user" differently for employees as opposed to spouses/domestic partners.  Employees may avoid the surcharge by "certify[ing] that you have not used nicotine for at least 6 months as of the date of your enrollment."  Spouses/domestic partners, however, must "certify that you have not used nico-tine for at least **12** months as of the date of your enrollment."  (emph. added).

51. The different and contradictory language in the same plan material causes confu-sion and leads to Plan participants being unable to make informed decisions.

52. During this period, Defendant controlled the tobacco surcharge, including determining which participants were charged and by withholding the tobacco surcharge from a participant's paycheck. On information and belief, rather than placing these funds in a trust account, Conduent retained the amounts collected as part of its own assets (although discovery is needed to confirm).

53. The Plan requires individuals to pay a premium or contribution that is greater than such premium or contribution for a similarly situated individual enrolled in the plan based on any tobacco use and fails to meet the safe harbor exception.

## III. DEFENDANT CANNOT AVAIL ITSELF OF ERISA'S SAFE HARBOR FOR WELLNESS PROGRAMS.

### A. LACK OF REASONABLE ALTERNATIVE STANDARD.

54. Defendant failed to provide a compliant wellness program for tobacco-using participants. As discussed further below, to qualify as a compliant wellness program under ERISA, an employer must offer a "reasonable alternative standard" for participants who cannot meet the initial health standard: in this case, being completely tobacco-free for at least 6 consecutive months under Defendant's strict definition.

55. The standard is intended to ensure that participants have an opportunity to avoid surcharges, such as tobacco-related premiums, by participating in wellness programs like smoking cessation programs. Additionally, employees must receive the *full reward* once they meet the alternative standard. To be clear, there must be a way for participants to avoid the surcharge for the full plan year, including retroactively once they complete the tobacco cessation program.

56. ERISA offers a limited exception to its general rules forbidding discrimination based on health status, by providing safe harbor for certain *bona fide* wellness programs. *See* 29

14

U.S.C. § 1182(b)(2)(B).

57.   This narrow exception means employers can offer incentives to plan participants, such as premium discounts, rebates, or adjustments to cost-sharing, in exchange for their participation in these wellness programs. One way for plans to take advantage of the safe harbor provisions while charging participants additional surcharges is to offer programs designed to increase the well-being of the person such as, for example, a smoking cessation program. The regulations covering health-contingent wellness programs require that the wellness programs, like smoking cessation programs, satisfy certain criteria. *See* 78 FR 33158, 33159.

58.   A plan seeking to qualify for the wellness program exception must offer a program that is "reasonable." The Department of Labor has issued regulations regarding what "reasonable" health-contingent programs must include.

59.   To qualify under ERISA, there are three basic requirements: <u>First</u>, the program must have a realistic chance of improving health or preventing disease for participants, and cannot be excessively difficult, discriminatory based on health, or use questionable methods; <u>second</u>, everyone in a similar situation must have a chance to earn the "full reward" — in other words, the program must offer a reasonable alternative or waiver for those who cannot meet the initial health standard; <u>third</u>, the program must be disclosed "in ***all*** plan materials" describing the reward and explaining the availability of a reasonable alternative standard or waiver, and must also provide the ability to request an accommodation to the standard through one's personal physician. 29 C.F.R. § 2590.702(f)(4) (emphasis added).

60.   These regulations "set forth criteria for an *affirmative defense* that can be used by plans and issuers in response to a claim that the plan or issuer discriminated under the [] nondiscrimination provisions." *See Incentives for Nondiscriminatory Wellness Programs in*

*Group Health Plans*, 78 Fed. Reg. 33158, 33160 (June 3, 2013) (emphasis added).

61. Crucially, *every one* of the safe harbor requirements "must be satisfied in order for the plan or issuer to qualify for an exception to the prohibition on discrimination based on health status." *Id.*

62. Defendant's tobacco surcharge program did not and does not satisfy the requirements that it provide a reasonable alternative standard. It also does not satisfy the requirements because it did not provide notice of a reasonable alternative standard. As a result, it cannot meet the elements of this affirmative defense.

63. Conduent references a "nicotine cessation" program one time in its 35-page Conduent Benefits Guide. It mentions that "Conduent has partnered with Truth Initiative to offer the EX Program." The "EX Program" appears to be a website with resources intended to help people quit smoking or tobacco use. Conduent boasts that this resource is "free to all Conduent associates," but based on the EX Program website it appears to be free to *anyone*, anywhere, who wants to quit smoking. Notably, the EX Program appears to be *just* a website, as the Benefits Guide lists its phone number as "N/A".

64. Apparently, the touted "EX Program" mostly involves signing up to receive "daily text messages full of tips and advice." It also touts "a resource library with expert guidance," (i.e., YouTube-style videos about tobacco), and "access to an active community of quitters" (i.e., an online forum).[2] This website / text message service does not remotely qualify as a *bona fide* wellness program.

65. Critically, the Benefits Guide provides no statement notifying employees whether participating in the EX Program will relieve employees from the tobacco surcharge

---

[2]   *See* https://join.exprogram.com/ (last visited March 19, 2026).

(either retroactively or prospectively). It is simply touted as a supposed "additional benefit" offered by Conduent although – as noted earlier – the EX Program appears to be free anyway.

66. The EX Program is therefore not a "reasonable alternative standard" under the controlling statutes and regulations.

67. The Benefits Guide's tobacco cessation program is therefore objectively insufficient to explain the process by which employees and their spouses/domestic partners can avoid or remove the nicotine surcharge.

68. The Benefits Guide Supplemental Life Insurance section also does not include any reference to a tobacco cessation program, and the reference to the EX Program does not include any reference to the Supplemental Life Insurance section. Therefore, it objectively does not explain how (or if) a nicotine user could avoid the Supplemental Life Insurance increased premiums through the program.

69. Participants who become tobacco-free partway through the plan year can avoid future surcharges starting the *next* Annual Enrollment, but are not retroactively reimbursed for any surcharges already paid in that Plan year. This practice violates ERISA's requirements that eligible participants must receive the "full reward."

70. Defendant, during the Class Period, maintained exclusive control over the tobacco surcharge, including determinations as to which participants were and continue to be required to pay the surcharge. On information and belief, Defendant withholds the amount of the surcharge from participants' paychecks and deposits these funds into Conduent's own accounts, rather than into a trust account (although discovery is needed to confirm).

71. By depositing these ill-gotten gains into its own accounts, Defendant has dealt with assets of the Plan for its own interests, in violation of ERISA. Defendant has a fiduciary

responsibility to ensure that these funds are used to support coverage for employees' health insurance. Instead, by charging and collecting this unlawful surcharge, Defendant has increased Conduent's own bottom line allowing it to unjustly realize financial benefits it would not have otherwise obtained without imposing these surcharges, in violation of ERISA's fiduciary duty standards.

72.    Defendant's failure to adequately disclose this information in all Plan materials deprives employees of the ability to make informed decisions about their health and wellness benefits and imposes an unlawful financial burden on employees who could otherwise meet the requirements of the alternative standard. Accordingly, the tobacco surcharge wellness program fails to comply with regulatory requirements to be a non-discriminatory wellness program under ERISA § 702.

73.    Plaintiff did not complete the tobacco cessation program because he was not adequately notified of the program. Even if Plaintiff had received the necessary compliant notifications of the reasonable alternative standard (which he did not), he would not have received the full reward of being reimbursed the full tobacco surcharge for the entire Plan year as the regulations require.

74.    Additionally, because the Plan fails to provide a compliant reasonable alternative standard that allows participants to receive the "full reward"— avoiding the surcharge for the entire plan year — Defendant's purported wellness program fails to provide any reasonable alternative standards and fails to comply with the requirement to make available the "full reward" to participants.

75.    On this basis alone, the Plan violates ERISA's anti-discrimination provisions.

**B.      Lack of Notice of Reasonable Alternative Standard.**

76.      ERISA requires that employers clearly communicate the availability of reasonable alternative standards to all employees in *all* plan materials. Defendant's plan documents fail to adequately communicate this option or only provide partial notice by specifying that quitting tobacco can avoid the surcharge only prospectively, in violation of ERISA's notification requirements.

77.      The regulations require plans and issuers to "disclose *in all plan materials* describing the terms of an outcome-based wellness program, and in any disclosure that an individual did not satisfy an initial outcome-based standard, the availability of a reasonable alternative standard to qualify for the reward (and, if applicable, the possibility of waiver of the otherwise applicable standard), *including contact information for obtaining a reasonable alternative standard and a statement that recommendations of an individual's personal physician will be accommodated*." 29 C.F.R. § 2590.702(f)(3)(v) (emphasis added); see also 42 U.S.C. § 300gg-4(j)(3)(E).

78.      Defendant does not include adequate notification in all Conduent Plan and Supplemental Life Insurance materials. As discussed above, the Conduent Benefits Guide only once refers to "tobacco cessation program," and it fails to notify participants of the availability of a reasonable alternative standard that would eliminate the tobacco surcharge for the entire plan year, in violation of ERISA, and does not state that the reasonable alternative standard can be met through accommodation of a personal physician recommendation.

79.      Instead, the guide states that the only way to avoid the surcharge is to be *completely* tobacco-free – i.e., not have smoked a single cigarette, even once – for a full six months prior to Annual Enrollment (or, in the case of spouses/domestic partners seeking Supplemental

19

Life Insurance, for a full 12 months).

80.    Conduent Plan materials do not inform employees that completing the program will entitle them to the full reward of avoiding the surcharge for the entire year, which discourages participation and violates ERISA's requirement that participants be clearly informed of their ability to avoid surcharges through reasonable alternative standards.

81.    Moreover, the Conduent Benefits Guide does not provide any information that those standards may be waived or avoided by providing a personal physician recommendation.

82.    Additionally, to be deemed a lawful wellness program, the regulations provide sample notification language. 29 C.F.R. § 2590.702(f)(6). Paragraph (f)(6) states:

> Your health plan is committed to helping you achieve your best health. Rewards for participating in a wellness program are available to all employees. If you think you might be unable to meet a standard for a reward under this wellness program, you might qualify for an opportunity to earn the same reward by different means. Contact us at [insert contact information] and we will work with you (and, if you wish, with your doctor) to find a wellness program with the same reward that is right for you in light of your health status.

29 C.F.R. § 2590.702(f)(6).

83.    Much of this language, including the ability to "earn the same reward by different means" and the fact that the Conduent Plan will "work with you . . . [and] with your doctor," is missing from the Plan's materials distributed to the Plan's participants.

84.    "[A] plan disclosure that references a premium differential based on tobacco use . . . must include this disclosure." 78 Fed. Reg.  33158-01, 33166.

85.    None of the Plan documents provided to Plaintiff or the Class in a written form, or digitally/electronically, disclose a means by which a participant could either receive the "full reward" for the tobacco surcharge for the entire Plan year, or a manner to waive or work with the

individual (including via accommodation of recommendation from the individual's personal physician) regarding how their tobacco use may be accommodated. Nor do they present specific contact information for the person or persons who can assist with determining the availability of any reasonable alternative beyond a tobacco cessation program.

86.    As a result, the Conduent Plan materials, as required by the wellness plan safeharbor, do not provide the required notice of the scope and nature of any tobacco surcharge program available to employees.

87.    Because Conduent has not complied with the requirement to provide notice of the availability and scope of the reasonable alternative standard in *all of the Plan's communications* by which a Plan participant could avoid the tobacco surcharge (including through a recommendation by a personal physician) and receive a full reward, the tobacco surcharge program is unlawful and the surcharge assessed to the Plaintiff and Class must be returned for the entire Class Period.

## CLASS ACTION ALLEGATIONS

88.    29 U.S.C. § 1132(a)(2) authorizes any participant or beneficiary of the Plan to bring an action individually on behalf of the Plan to enforce a breaching fiduciary's liability to the Plan under 29 U.S.C. § 1109(a).

89.    29 U.S.C. § 1132(a)(3) authorizes any participant or beneficiary of the Plan to bring an action for statutory violations of ERISA for "appropriate equitable relief."

90.    In acting in this representative capacity, Plaintiff seeks to certify this action as a class action on behalf of all participants and beneficiaries of the Plan who were subject to the unlawful Conduent tobacco surcharge. Plaintiff seeks to certify, and to be appointed as a representative of, the following Class:

21

> All persons in the United States who paid Conduent's tobacco surcharge in connection with the Conduent Business Services, LLC Welfare Benefit Plan or the Conduent Supplemental Life Insurance at any time from six years prior to the filing of the Complaint to the date of judgment.

91.   Excluded from the Class are the Court and its officers, employees and relatives; Conduent and its subsidiaries, officers, directors, and the Plan's fiduciaries; and governmental entities.

92.   The Class includes thousands or tens of thousands of members and is so numerous that joinder of all members is impracticable, pursuant to Federal Rule of Civil Procedure 23(a)(1).

93.   There are questions of law and fact common to this Class pursuant to Federal Rule of Civil Proc. 23(a)(2), because Defendant owed fiduciary and other duties to the Plan and its participants and failed to take the actions alleged as to the Plan and as to any individual participant. Common questions of law and fact include but are not limited to the following:

a.   Whether Conduent's tobacco surcharge discriminates against Plan participants based on a health status-related factor;

b.   Whether Conduent's tobacco surcharge program qualifies for statutory safe harbor protection as a compliant wellness program;

c.   Whether Conduent can meet every element of its statutory affirmative defense for operating a compliant wellness program;

d.   Whether all of the Conduent Plan materials describing the tobacco surcharge gave notice of a reasonable alternative standard by which a plan participant may receive the full reward; and

e.   Whether Conduent, in its discretionary fiduciary capacity of managing the Conduent Plan, breached its fiduciary duties with respect to its collection and retention of the tobacco surcharge.

94.   Plaintiff's claims are typical of the claims of the pertinent class pursuant to

22

Federal Rule of Civil Procedure 23(a)(3), because all class claims arise from the same course of conduct by Conduent – its collection of an unlawful tobacco surcharge – and are based on the same legal theories.

95.    Plaintiff will adequately represent the Class pursuant to Federal Rule of Civil Procedure 23(a)(4), because he was a participant in the Plan during the Class period, has no interests that conflict with the Class, is committed to the vigorous representation of the Class, and has engaged experienced and competent lawyers.

96.    Certification is appropriate under Federal Rule of Civil Proc. 23(b)(1), because prosecution of separate actions for these breaches of fiduciary duties by individual participants and beneficiaries would create the risk of (1) inconsistent or varying adjudications that would establish incompatible standards of conduct for Defendant concerning the discharge of fiduciary duties to the Plan and personal liability to the Plan under 29 U.S.C. § 1109(a), and (2) adjudications by individual participants and beneficiaries regarding these breaches of fiduciary duties and remedies for the Plan which would, as a practical matter, be dispositive of the interests of the participants and beneficiaries who are not parties to the adjudication, or would substantially impair those participants' and beneficiaries' ability to protect their interests.

97.    Certification is also appropriate under Federal Rule of Civil Procedure 23(b)(2) because Defendant has acted or refused to act on grounds that apply generally to the Class, so that final injunctive relief or corresponding declaratory relief is appropriate respecting the class as a whole.

98.    Plaintiff's attorneys have substantial and varied experience in complex ERISA and class action litigation and will adequately represent the Class.

99.    Plaintiff's claims arise from fiduciary breaches as to the Plan in its entirety and

do not involve mismanagement of individual accounts.

100. The claims asserted on behalf of the Plan in this case fall outside the scope of any exhaustion language in the individual participant's Plan.

101. Exhaustion is intended to serve as an administrative procedure for participants and beneficiaries whose claims have been denied, not where a participant or beneficiary brings suit on behalf of a Plan for statutory violations and breaches of fiduciary duty.

102. Under ERISA, an individual "participant" or "beneficiary" is distinct from an ERISA Plan. A participant's obligation – such as a requirement to exhaust administrative remedies – does not, by itself, bind the Plan.

103. Moreover, any administrative appeal would be futile because the entity hearing the appeal (the Plan Administrator) is the same Plan Administrator that made the decisions that are at issue in this lawsuit.

104. Policy supporting exhaustion of administrative remedies in certain circumstances – that the Court should review and where appropriate defer to a Plan administrator's decision – does not exist here because courts will not defer to Plan administrator's legal analysis and interpretation.

### FIRST CLAIM FOR RELIEF
**ERISA Statutory Violation – Unlawful Surcharge**
**ERISA Section 502(a)(3)**
**Failure to Provide a Reasonable Alternative Standard Against Conduent**

105. Plaintiff restates paragraphs 1-104 above as if fully set forth herein.

106. To enroll in the Conduent Plan, Plaintiff, class members, and their spouses/domestic partners were required to pay a tobacco surcharge in the amount of $600 or more per Plan year. To enroll in the Conduent Plan's Supplemental Life Insurance, Plaintiff, class members, and their spouses/domestic partners were required to pay a tobacco surcharge of varying amounts

depending on their demographic factors.

107. Conduent's tobacco surcharge program is not and was not a permissible wellness program, because it did not provide for a reasonable alternative standard, in that:

    a.   The Conduent Plan did not allow participants a reasonable alternative means to avoid the tobacco surcharge by enrolling in a compliant smoking cessation program;

    b.   Even a former tobacco user who became "tobacco free" under Conduent's strict definition would still have the surcharge deducted from their pay going forward, until the following Annual Enrollment date; and

    c.   Because a participant could not receive the "full reward," the plan did not provide for a reasonable alternative standard.

108. Conduent cannot and did not meet every element of its affirmative defense for operating a lawful, compliant wellness program, and is therefore not entitled to statutory safe harbor protection.

109. Conduent's tobacco surcharge has discriminated against, and continues to discriminate against, Plan participants based on a health status-related factor and it is assessing premiums or contributions, in violation of 29 U.S.C. § 1182(b).

110. 29 U.S.C. § 1182(b) is a provision of ERISA that Plaintiff and the class members may enforce pursuant to 29 U.S.C. § 1132(a)(3).

111. Plaintiff and the class members were required to pay an illegal fee, and Conduent collected that fee from them in violation of the law. Equity requires that those funds be returned.

112. Equity also requires that the Conduent Plan be operated in conformance with the statutory safe-harbor for wellness programs.

**SECOND CLAIM FOR RELIEF**
**ERISA Statutory Violation – Unlawful Surcharge**
**ERISA Section 502(a)(3)**
**Failure to Give Required Notice Against Conduent**

113. Plaintiff restates paragraphs 1-104 above as if fully set forth herein.

114. To enroll in the Conduent Plan, Plaintiff and the Class members were required to pay a tobacco surcharge in the amount of $600 per year or more. To enroll in the Conduent's Supplemental Life Insurance, Plaintiff, class members, and their spouses/domestic partners were required to pay a tobacco surcharge of varying amounts depending on their demographic factors.

115. Conduent's tobacco surcharge program is not and was not a permissible wellness program, because Conduent did not offer a reasonable alternative standard, did not give the statutorily-required notice on the scope and nature of the reasonable alternative standard, in that none of the plan documents provided to Plaintiff or the Class members in a written form, or digitally on the computer, provided a fully compliant means by which a participant could receive the full retroactive reward for the tobacco surcharge for the plan year or provided a statement that recommendations of an individual's personal physician regarding their tobacco use would be accommodated.

116. Conduent therefore cannot meet every element of its affirmative defense for operating a lawful, compliant wellness program, and is therefore not entitled to statutory safe harbor protection.

117. Conduent's tobacco surcharge has discriminated against, and continues to discriminate against, Plan participants based on a health status-related factor and it is assessing premiums or contributions, in violation of 29 U.S.C. § 1182(b).

118. 29 U.S.C. § 1182(b) is a statutory provision of ERISA that Plaintiff and the Class members may enforce pursuant to 29 U.S.C. § 1132(a)(3).

119. Plaintiff and the Class members were required to pay an illegal surcharge,

and Conduent collected that fee from them in violation of the law. Equity requires that those funds be returned to Plaintiff and the Class members.

120.   Equity also requires that the Conduent Plan be operated in conformance with the statutory safe-harbor for wellness programs.

**THIRD CLAIM FOR RELIEF**
**ERISA Breach of Fiduciary Duty**
**ERISA Section 502(a)(2)**
**Breach of Duty of Loyalty Against Conduent**

121.   Plaintiff restates paragraphs 1-104 above as if fully set forth herein.

122.   At all times relevant to this lawsuit, Conduent was the administrator of the Conduent Plan within the meaning of 29 U.S.C. § 1002(16), and was a fiduciary within the meaning of 29 U.S.C. § 1002(21)(A), in that it exercised discretionary authority and discretionary control respecting management of the Conduent Plan and Conduent Supplemental Life Insurance and disposition of its assets by holding in trust the funds collected from the tobacco surcharge, and had discretionary authority and discretionary responsibility in the administration of the Conduent Plan and Conduent Supplemental Life Insurance.

123.   Conduent breached its fiduciary duties by assessing and collecting the tobacco surcharge in violation of the law, as the receipt of additional funds reduced its own costs associated with funding the Plan and forestalled its own obligations to make contributions thereto.

124.   As a result of the imposition of the tobacco surcharge, Conduent enriched itself at the expense of the Class Members, thereby allowing Conduent a windfall.

125.   Conduent breached its fiduciary duties under ERISA in that it failed to act solely in the interest of the Conduent Plan participants and beneficiaries and for the exclusive purpose of providing benefits to participants and their beneficiaries and defraying reasonable

27

expenses of plan administration, in violation of ERISA. *See* 29 U.S.C. § 1104(a)(1)(A).

126.    As a result of these breaches, and pursuant to 29 U.S.C. § 1109,  Conduent is liable to make good to the plan all losses to the plan resulting from its breaches, to disgorge all unjust enrichment and ill-gotten profits, and to restore to the plan and/or a constructive trust of all profits it acquired through its violations alleged herein and which it made through use of assets of the plan – along with such other equitable or remedial relief as is proper.

127.    Plaintiff is authorized to bring this action on behalf of the plan pursuant to 29 U.S.C. § 1132(a)(2).

### FOURTH CLAIM FOR RELIEF
**ERISA Breach of Fiduciary Duty**
**ERISA Section 502(a)(2)**
**Breach of Duty of Prudence Against Conduent**

128.    Plaintiff restates paragraphs 1-104 above as if fully set forth herein.

129.    ERISA's duty of prudence requires a fiduciary to act "with the care, skill, prudence, and diligence under the circumstances then prevailing that a prudent man acting in a like capacity and familiar with such matters would use in the conduct of an enterprise of a like character and with like aims…" 29 U.S.C. § 1104(a)(1)(B). The duty of prudence focuses on the thoroughness of a fiduciary's investigation before making a decision and asks "whether a fiduciary employed the appropriate methods to investigate and determine the merits of a particular" decision. *Sacerdote v. N.Y. Univ.*, 9 F.4th 95, 107 (2d Cir. 2021).

130.    Conduent breached  its  fiduciary duties by failing to conduct an adequate and thorough investigation regarding the assessment of a tobacco surcharge on Plaintiff and other Plan participants and beneficiaries.

131.    Conduent failed to adequately investigate and assess the strict legal requirements necessary to impose a lawful nicotine / tobacco surcharge under ERISA and the PHSA.

28

132.   These fiduciary violations caused injury to Plaintiff and other Plan participants and beneficiaries who were required to pay unlawful surcharges as a direct result of the Defendant's imprudent and insufficient investigation and analytic process.

133.   As a result of these breaches, and pursuant to 29 U.S.C. § 1109,  Conduent is liable to make good to the plan all losses to the plan resulting from its breaches, disgorge all unjust enrichment and ill-gotten profits, and to restore to the Plan and/or a constructive trust of all profits it acquired through its violations alleged herein and which it made through use of assets of the Plan, and for such other equitable or remedial relief as is proper.

134.   Plaintiff is authorized to bring this action on behalf of the plan pursuant to 29 U.S.C. § 1132(a)(2).

**WHEREFORE**, Plaintiff requests the Court enter judgment in his favor, both individually and on behalf of all participants and beneficiaries in the Conduent Plan, and award the following relief:

   a.  certifying a class action for Plaintiff's ERISA claims and appointing The Lacy Employment Law Firm LLC, Chirinos Law Firm PLLC, Bloom Legal, and Stiegler Law Firm LLC, as Class counsel;

   b.  requiring Conduent to reimburse all participants who paid the tobacco surcharges from March 23, 2020, through the date of judgment plus interest;

   c.  requiring Conduent to revise any tobacco surcharge program it intends to maintain to comply with ERISA § 702, 29 U.S.C. § 1182, and its implementing regulations;

   d.  enjoining Conduent from collecting tobacco surcharges until Conduent revises its tobacco surcharge program to comply with ERISA § 702, 29 U.S.C. § 1182, and its implementing regulations;

   e.  imposing a constructive trust on profits received by Conduent as a result of fiduciary breaches committed by it or for which it is liable, upon which Plaintiff

and members of the Class can make claims for benefits;

f.   requiring Conduent to disgorge all unjust enrichment or profits received as a result of fiduciary breaches committed by it with regard to the tobacco surcharge program for which it is liable;

g.   ordering Conduent to provide all accountings necessary to determine the amounts Conduent must make good to the Conduent Plan and to plan participants and beneficiaries;

h.   imposing the equitable remedy of surcharge and requiring Conduent to return all funds it derived from the illegal tobacco surcharge program;

i.   removing the fiduciaries who have breached their fiduciary duties and enjoining them from future ERISA violations;

j.   awarding Plaintiff's counsel attorneys' fees and costs consistent with ERISA's fee and cost shifting provisions for the costs of prosecuting this action;

k.   ordering the payment of interest to the extent it is allowed by law; and

l.   granting any further relief that the Court may deem just and equitable.

March 23, 2026                                     Respectfully submitted,

                                                  /s/ *Austin D. Skelton*
                                                  Austin D. Skelton, Esq. NJ ID: 363022022
                                                  **THE LACY EMPLOYMENT LAW FIRM LLC**
                                                  2564 Brunswick Pike
                                                  Lawrenceville, NJ 08648
                                                  609-900-4053
                                                  austin.skelton@employment-labor-law.com

                                                  **CHIRINOS LAW FIRM PLLC**
                                                  Tulio D. Chirinos*
                                                  20283 State Road 7, Ste 592
                                                  Boca Raton, FL 33432

Telephone: (561) 299-6334
tchirinos@chirinoslawfirm.com

**STIEGLER LAW FIRM LLC**
Charles J. Stiegler*
318 Harrison Ave., #104
New Orleans, La. 70124
Telephone: (504) 267-0777
charles@stieglerlawfirm.com

**BLOOM LEGAL LLC**
Seth J. Bloom*
825 Girod Street, Suite A
New Orleans, Louisiana 70113
Telephone: (504) 599-9997
Email: sjb@bloomlegal.com


*\* Pro Hac Vice Application Forthcoming*

*Attorneys for Plaintiff and Proposed Class*